## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MICHAEL DILLON**                                          **CIVIL ACTION**

**VERSUS**                                                 **NO. 05-3760**

**BURL N. CAIN, WARDEN**                                   **SECTION "N" (6)**

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.

Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2).  Accordingly, it is **HEREBY RECOMMENDED** that the instant petition for federal habeas corpus relief be **DENIED WITH PREJUDICE.**

# I.  PROCEDURAL HISTORY[1]

On January 23, 2001, petitioner, Michael Dillon, a state prisoner presently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana, was charged, via a bill of information, with five counts of distribution of cocaine, in violation of LSA-R.S. 40:967(A).  On March 7, 2001, trial was held and the jury found petitioner guilty as charged on all five counts.  On March 15, 2001, petitioner was sentenced, with respect to each count, to consecutive 20-year sentences, with the first five years to be served without benefit of parole, probation or suspension of sentence.  That same day, the State filed a multiple offender bill of information and petitioner denied the allegations of the multiple bill.

On April 4, 2001, the State presented evidence in support of the multiple offender bill of information and the trial judge found that petitioner was a third felony offender with one violent predicate offense.  That day, the trial court vacated petitioner's sentence on count five and imposed an enhanced sentence of life imprisonment without benefit of parole, probation or suspension of sentence, to be served consecutively to the original 20-year sentences for counts one through four.

Pursuant to petitioner's appeal, the Louisiana Fifth Circuit Court of Appeal, on February 26, 2002, affirmed petitioner's convictions and sentences, but remanded the matter with instructions that the district court advise petitioner of the two-year period,

---

[1] The procedural history is taken from the Louisiana Fifth Circuit Court of Appeal decision, *State v. Dillon*, 812 So.2d 770, 771 (La. App. 5 Cir. 2002).

2

provided under La.C.Cr.P. art. 930.8, for seeking post-conviction relief. *See State v. Dillon*, 812 So.2d 770 (La. App. 5 Cir. 2002). On April 21, 2003, the Louisiana Supreme Court denied petitioner's writ application. *See State v. Dillon*, 841 So.2d 779 (La. 2003).

On or about January 5, 2004, petitioner sought post-conviction relief from the state district court. Petitioner's effort in this regard culminated on March 24, 2005, when the Louisiana Supreme Court denied his writ application. *See State ex rel. Dillon v. State*, 896 So.2d 1027 (La. 2005).

On July 19, 2005, petitioner filed the instant action for federal habeas corpus relief,[2] raising the following claims: 1) He was denied his constitutional right to testify on his own behalf; 2) the evidence presented at the multiple offender hearing was insufficient to adjudicate him as a third felony offender; 3) he was subjected to an ex post facto application of the Louisiana habitual offender law's cleansing period; 4) his trial counsel was unconstitutionally ineffective; 5) his appellate counsel was unconstitutionally ineffective; and, 6) he received an unconstitutionally excessive sentence. The State, in its response,

---

[2]*See* Federal rec., doc. 1. This July 19, 2005 filing date was ascertained via the court's use of the "mailbox rule." Under this rule, a pleading filed by a prisoner acting pro se is considered to be filed for prescriptive purposes on the date it is delivered to prison officials for mailing, rather than the date it is received by the court. *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Generally, the date a prisoner signs his petition is presumed to be the date he or she delivered it to prison officials for mailing. *See Colarte v. Leblanc*, 40 F.Supp.2d 816, 817 (E.D. La. 1999) (assumed that petitioner turned habeas corpus application over to prison officials for delivery to this court on the date application was signed); *Magee v. Cain*, 2000 WL 1023423, *4 n.2 (E.D. La. 2000) (inferred that filing date and signature date of habeas petition were the same); *Punch v. State*, 1999 WL 562729, *2 n.3 (E.D. La. 1999) (may reasonably be inferred that prisoner delivered habeas petition to prison officials for mailing on date petition was signed).

concedes that the instant action is timely and that petitioner has exhausted his state court remedies as required under *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982). Accordingly, this court shall review the pertinent facts, then proceed to address the merits of petitioner's claims.

## II. FACTS[3]

In March of 2000, the Jefferson Parish Sheriff's Office ("JPSO") Narcotics Division began an undercover narcotics operation in response to citizen complaints that an individual was selling illegal narcotics in the Avondale area. One of the coordinating officers, Lisa Fleming, testified that on March 13, 2000, she provided an undercover agent with currency to purchase narcotics and a vehicle equipped with audio and video equipment to record that purchase. That same day, the undercover agent purchased two rocks of crack cocaine from a man who identified himself as "Michael Dillon." The transaction was recorded on videotape. On March 16, 2000, the undercover agent identified petitioner in a photographic line-up.

On April 4, 2000, another undercover agent purchased two rocks of cocaine from petitioner. The transaction was recorded on videotape. The second undercover agent also identified petitioner in a photographic line-up.

On April 5, 2000 and April 17, 2000, the first undercover agent again

---

[3]The facts are taken from the Louisiana Fifth Circuit Court of Appeal decision, *State v. Dillon*, 812 So. 2d 770 (La. App. 5 Cir. 2002).

purchased two rocks of crack cocaine from petitioner.  Both of these transactions were also recorded on videotape.  On June 13, 2000, the second undercover agent again purchased two rocks of cocaine from the petitioner.  This transaction was also videotaped.

At trial, all five videotapes were played for the jury.  Further, the parties stipulated that the substances acquired from all five transactions tested positive for cocaine. Finally, at trial, both undercover agents identified petitioner as the person from whom they purchased crack cocaine.

## III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law where there has been an adjudication on the merits in State court proceedings.

State court determinations of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference unless they were "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."  *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  The United States Supreme Court has advised that:

> Under the "contrary to" clause, a federal habeas corpus court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently

5

than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 1056, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *Hill*, 210 F.3d at 485.  Questions of fact found by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it `was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill*, 210 F.3d at 485, quoting 28 U.S.C. § 2254(d)(2).

## IV.  ANALYSIS

### A.  Denial of Right to Testify

Petitioner contends that "he was denied his Constitutional right to testify by defense counsel", elaborating:  "During trial, and while the jury was out, defense counsel Mr. Schmidt informed the trial court judge that he recommended to the defendant not to testify. However, trial counsel also admitted on record that the defendant 'wants to testify', and that he is considering it."[4]  Petitioner further informs that after the State rested its case, defense counsel again addressed the trial judge, stating, once again, that he had advised his client not to testify.  With respect to this pronouncement, however, counsel stated that his client had

---

[4]*See* Federal rec., doc. 1, petitioner's supporting memorandum at p. 3.

6

decided to "follow[] his advise [sic]."[5]  Petitioner contends that he decided to follow his counsel's advice not because he no longer desired to offer testimony at trial, but because counsel erroneously informed him "that it was too late for him to testify" because the State had rested its case.[6]

"A criminal defendant has a constitutional right to testify in his own behalf; it is an aspect of his right to defend himself, a right held in *Rock v. Arkansas*, 483 U.S. 44, 51-53, 107 S.Ct. 2704, 2709-10, 97 L.Ed.2d 37 (1987), to be implicit in the Fifth, Sixth and Fourteenth Amendments." *Underwood v. Clark*, 939 F.2d 473, 475 (7th Cir. 1991) (citations omitted); *see also White v. Cain*, 2006 WL 3703240, *4 (E.D. La. 2006).  A habeas petitioner, however, has the burden of proving that he was denied this constitutional right. As the court explained in *Turcios v. Dretke*, 2005 WL 3263918, *6 (S.D.Tex. 2005), "a petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand.  *Underwood v. Clark,* 939 F.2d 473, 475-76 (7th Cir. 1991)."  The *Underwood* court specifically noted the potential problem posed if a habeas petitioner, arguing that counsel unconstitutionally denied him his right to testify, is not required to satisfy his burden of proof.

---

[5]*See* Federal rec., doc. 1, petitioner's supporting memorandum at p. 3.

[6]*See* Federal rec., doc. 1, petitioner's supporting memorandum at p. 4.

There is grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right (that is, a right not waivable by counsel) to testify on his own behalf without rendering the criminal process unworkable.  It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen. Yet it is simple enough after being convicted for the defendant to say, "My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial."  That's what Underwood did.  His affidavit, which is the only evidence bearing on the question, states, so far as pertinent here, "I was denied the opportunity to testify at my own trial in that I told my attorney that I wished to testify on my own behalf.  My attorney told me I could not testify.

We agree with the First Circuit's ruling in *Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987), that this barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him.  It just is too facile a tactic to be allowed to succeed.  Some greater particularity is necessary-and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify-to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

*Underwood*, 939 F.2d at 475-76.

In the instant matter, there is no evidence to prove petitioner's claim other than his statement to the effect that defense counsel denied him his constitutional right to offer testimony at trial.  "Standing alone, such self-serving statements cannot be allowed to succeed or the criminal judicial process would become unworkable." *Turcios*, 2006 WL at *6, citing *Underwood*, 939 F.2d at 475-76.  Accordingly, the court finds that petitioner has failed to meet his burden to establish that he is entitled to habeas corpus relief.

Additionally, the Fifth Circuit has provided "that where the defendant contends that his counsel interfered with his right to testify, the 'appropriate vehicle for such claims

is a claim of ineffective assistance of counsel.'" *U.S. v. Mullins*, 315 F.3d 449, 452 (5th Cir. 2002), *cert. denied*, 541 U.S. 1031, 124 S.Ct. 2096, 158 L.Ed.2d 713 (2004), quoting *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001) (quotation omitted).  The seminal case for adjudicating a habeas petitioner's ineffective assistance of counsel claim is *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984), which places on petitioner the burden of demonstrating not only that his counsel's performance was deficient, but also that he was prejudiced as a result of counsel's deficient performance.  If a court finds that a petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.  *Id*.

Under the deficient performance prong of the *Strickland* test, "... it is necessary to 'judge...counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993),quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.  A counsel's decision regarding whether to place a criminal defendant on the witness stand "is a 'judgment call' which should not easily be condemned with the benefit of hindsight." *United States v. Garcia*, 762 F.2d 1222, 1226 (5th Cir. 1985).  "'An attorney's performance, which enjoys a strong presumption of adequacy, is deficient if it is objectively unreasonable." *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995), *cert. denied*, 516 U.S. 1165, 116 S.Ct. 1056, 134 L.Ed.2d 201 (1996), quoting *United States v. Acklen*, 47 F.3d 739, 742 (5th Cir. 1995), *cert. denied*, 519 U.S. 1142, 117 S.Ct. 1017, 136 L.Ed.2d 893 (1997).  To prove prejudice under

the *Strickland* standard, a petitioner "... must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

Petitioner, in conjunction with his allegation that he was unconstitutionally deprived of his right to testify, raises an ineffectiveness claim.  Specifically, petitioner argues:

> It is Petitioner's contention that his trial counsel informed him when he asked as to just when will he get to testify, that it was too late to do so since the State decided to rest.  It was then that the defense rested its case without calling any witnesses.  That was the performance that prejudiced the defense.  Had Petitioner known that he could have still testified in his own behalf, he would have certainly exercised such right to the fullest.[7]

Petitioner, however, in support of the above argument, fails to specify what the content of his testimony would have been and fails to show that it is reasonably probable that his testimony would have changed the result of his proceeding.  Accordingly, petitioner has failed to satisfy his burden of proof and is not entitled to habeas corpus relief.

**B.  Insufficient Evidence to Adjudicate Petitioner to be a Third Felony Offender**

Petitioner argues that the trial court "erred in adjudicating [him] to be a multiple offender because there was insufficient evidence of the prior guilty pleas." Specifically, petitioner contends that his two prior convictions could not properly be used for enhancement purposes because "there was no showing as to his valid waiver of rights".

---

[7]*See* Federal rec., doc. 1, petitioner's supporting memorandum at p. 9.

Because no *Boykin* transcript or minute entry was introduced into evidence at his multiple bill hearing, petitioner asserts that there is no way to discern whether his prior guilty pleas "were constitutionally sound according to *Boykin v. Alabama*."[8]   As shown below, petitioner's argument, for the purpose of attaining federal habeas corpus relief, is without merit.

The Supreme Court has made clear that generally, "federal postconviction relief is [not] available when a prisoner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody."  *Lackawanna County District Attorney v. Coss*, 532 U.S. 394, 121 S.Ct. 1567, 1570, 149 L.Ed.2d 608 (2001).  The Court held:

> [O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid....  If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

*Id*. at 1574.[9]

_____

[8]*See* Federal rec., doc. 1, petitioner's supporting memorandum at pp. 10-11.  Petitioner also asserts that there was no evidence presented at his multiple offender hearing that "the cleansing period set forth in La. R.S. 15:529.1(C) had not elapsed with respect to [his] prior offense of attempted simple robbery".  As shown *infra* at pp. 12-16, the applicable ten-year cleansing period under La. R.S. 15:529.1(C) clearly had not elapsed with respect to either of petitioner's prior offenses.  Accordingly, this claimed evidentiary deficiency is without merit.

[9]There are two exceptions to the above general rule.  One exception is with respect to habeas petitions challenging an enhanced sentence "on the basis that the prior conviction used to enhance

As set forth above, petitioner cannot challenge the constitutionality of his prior convictions for purposes of attacking the enhanced sentence he is presently serving. Accordingly, the instant claim for habeas relief is without merit.

## C.  Ex Post Facto Clause Violation

Art. I, §10, cl. 1 of the United States Constitution provides, in pertinent part: "No state shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts . . . ."  An ex post facto law, by definition, is one that "impermissibly applies retroactively . . . by criminalizing an action that was legal when it was committed." Black's Law Dictionary 620 (8th ed. 2004).  The United States Supreme Court has long recognized that the constitutional prohibition of ex post facto laws applies only to criminal or penal statutes.  *Calder v. Bull*, 3 U.S. 386 (1798).[10]  Moreover, for a criminal or penal law to be considered as applied ex post facto, it "must apply to events occurring before its

_____

the sentence was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment...."  *Id*.  The second exception might lie, albeit in a rare circumstance, where through no fault of his own, there was no channel of review actually available to petitioner through which he might have timely challenged his prior conviction.  *Id*. at 1575.  Neither of these exceptions are applicable in the instant situation.

[10]In *Calder*, Justice Chase delineated the type of laws which would run afoul of the ex post facto prohibition:  "1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action.  2d. Every law that aggravates a crime, or makes it greater than it was, when committed.  3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th.  Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender." *Id*. at 390.

enactment, and it must disadvantage the offender affected by it."  *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d. 17 (1981).

Petitioner argues that the trial court "violated the ex post facto clause" and his right to due process when it adjudicated him to be a third felony offender under the current multiple bill statute that was not in effect in 1989, when he committed the offense, specifically, attempted simple robbery, which served as one of the predicate offenses used to adjudicate him to be a third felony offender.[11]  Louisiana's current multiple bill statute, La.R.S. 15:529.1(C), as amended in 1995 and as applied to petitioner, provides, in pertinent part:

> The current offense shall not be counted as, respectively, a second, third, fourth, or higher offense if more than ten years have elapsed between the date of the commission of the current offense or offenses and the expiration of the maximum sentence or sentences of the previous conviction or convictions, or adjudication or adjudications of delinquency, or between the expiration of the maximum sentence or sentences of each preceding conviction or convictions or adjudication or adjudications of delinquency alleged in the multiple offender bill and the date of the commission of the following offense or offenses.

Earlier versions of the above statute provided for shorter "cleansing periods", i.e, a shorter number of years between the date of the commission of the current offense and the expiration of the maximum sentence of a preceding offense for purposes of essentially wiping the prior offense from one's record for purposes of using said offense to find a defendant to be a

---

[11]*See* Federal rec., doc. 1, petitioner's supporting memorandum at pp. 17-18.

second, third, fourth, or higher felony offender.  Because a five-year cleansing period was in effect in 1989, when petitioner committed the pertinent predicate offense, he argues that the five year period should be employed for purposes of determining whether or not his 1989 offense can properly be used to enhance the sentence he received in connection with his 2000 distribution of cocaine offense.  Because five years had passed from the time he committed his 2000 distribution of cocaine offense and the expiration of the maximum sentence associated with his 1989 attempted simple robbery offense, petitioner argues that his 1989 attempted simple robbery offense could not properly be used to enhance the sentence he received in connection with his 2000 distribution of cocaine offense.

The U.S. Supreme Court has held that "[e]nhancement statutes, whether in the nature of criminal history provisions such as those contained in the Sentencing Guidelines, or recidivist statutes, [such as LSA-R.S. 15:529.1,] which are commonplace in state criminal laws, do not change the penalty imposed for the earlier conviction." *Nichols v. United States*, 511 U.S. 738, 746, 114 S. Ct. 1921, 1927, 128 L.Ed.2d. 745 (1994)(emphasis added). *See also Gryger v. Burke*, 334 U.S. 728, 731, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948) (an enhanced sentence is not a new jeopardy or additional penalty for an earlier crime but rather a stiffened penalty for the latest offense which is considered an aggravated offense because it is a repetitive one.)  Thus, the relevant offense, for purposes of analyzing the ex post facto implications of repeat offender statutes, is the current crime, not the earlier crime or crimes.

14

*Accord U.S. v. Rasco*, 123 F.3d 222, 227 (5th Cir. 1997), *cert. denied*, 522 U.S. 1083, 118 S.Ct. 868, 139 L.Ed. 2d 765 (1998); *United States v. Ursidae-Nunez*, 18 F. 3d 730, 734 (9th Cir. 1994). Since petitioner's argument before this court is contingent upon viewing the relevant offense as his attempted simple robbery offense, which he committed in 1989, his argument must be rejected.

The ex post facto clause's prohibition extends only to a statute which "punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with a crime of any defense available according to law at the time when the act was committed." *Collins v. Youngblood*, 497 U.S. 37, 42, 110 S.Ct. 2715, 2718, 111 L.Ed.2d. 30 (1990). In petitioner's case, the 1995 amendment to LSA-R.S. 15:529.1(C)'s cleansing period did not apply to a criminal act "previously committed" because the relevant act, the 2000 distribution of cocaine, was committed *after* the change in the multiple offender law. Nor did the change in the cleansing period retroactively make the punishment for the 2000 cocaine distribution more severe. Finally, since LSA-R.S. 15:529.1(C)'s amendment occurred prior to the commission of petitioner's present crime of cocaine distribution, he was not deprived of a defense to that crime through an ex post facto application of law. In sum, the paramount concern of the Constitution's ex post facto prohibition is that an individual be given fair notice of a crime or of punishment for a crime prior to the crime being committed.

15

*See Weaver*, 450 U.S. at 29, 101 S.Ct. at 964. Since LSA-R.S. 15:529.1(C) was amended prior to petitioner's commission of his third felony offense, this notice requirement was met. Petitioner thus fails to show that the increased cleansing period provided under the habitual offender statute in effect at the time of his cocaine distribution conviction (for which he received the enhanced sentence) violated the prohibition against ex post facto application of law.

### D.  Ineffective Assistance of Trial Counsel

Petitioner argues that trial counsel was unconstitutionally ineffective due to "his failure to present argument that his client was not advised of his constitutional rights before entering [his] prior guilty pleas and his failure to challenge the cleansing period before the trial court."[12] As noted earlier, to prove ineffective assistance of counsel for the purpose of attaining habeas corpus relief, a petitioner must prove that counsel's performance was deficient and that he was prejudiced by counsel's deficiency. *See Strickland*, *supra*. In this case, petitioner has failed to show the requisite prejudice in that he has failed to show that he, in fact, was not advised of his constitutional rights in connection with his prior guilty pleas and therefore, was prejudiced by counsel's failure, at the multiple bill hearing, from challenging the use of his convictions arising from said guilty pleas for the purpose of enhancing his present sentence.

---

[12]*See* Federal rec., doc. 1, petitioner's supporting memorandum at p. 23.

16

With respect to petitioner's claim that counsel was ineffective due to "his failure to challenge the cleansing period", again, petitioner cannot show the requisite prejudice.  As noted *supra*, the applicable cleansing period, for purposes of enhancing petitioner's present sentence, was the ten-year period provided for under LSA-R.S. 15:529.1(C) as amended in 1995, not the period provided for under LSA-R.S. 15:529.1(C) as the statute existed at the time petitioner committed the crimes associated with his prior convictions.  There is no question that ten years had not elapsed from the time of expiration of the maximum sentences associated with petitioner's prior convictions and the time when he committed the crime, distribution of cocaine, for which he is presently serving his enhanced sentence.  Accordingly, petitioner suffered no prejudice due to trial counsel's failure to challenge the cleansing period.

### E.  Ineffective Assistance of Appellate Counsel

To prove that appellate counsel was ineffective, petitioner must satisfy the two-prong test enunciated in *Strickland* , *supra*, that counsel's performance was deficient and that the deficient performance prejudiced the defense.  *See Busby v. Dretke*, 359 F.3d 708, 714 (5th Cir.), *cert. denied*, 541 U.S. 1087, 124 S.Ct. 2812, 159 L.Ed.2d 249 (2004) (citations omitted*)* ("The familiar *Strickland* framework applies to a prisoner's claim that his appellate counsel was ineffective for failing to raise a certain issue on appeal.").  Petitioner claims that appellate counsel was unconstitutionally ineffective due to his failure to raise on appeal the

following arguments:  1) That petitioner was denied his constitutional right to testify on his own behalf at trial; 2) that evidence of the constitutionality of petitioner's prior convictions was insufficient for the purpose of using these prior convictions to enhance petitioner's present sentence; and, 3) that the trial court violated his due process rights "when it adjudicated [p]etitioner a third felony offender in violation of the ex post facto law."[13] However, for the reasons set forth earlier, all of the above arguments are without merit.[14] Accordingly, petitioner cannot show that he was prejudiced by counsel's failure to raise these arguments on appeal.

### F.  Excessive Sentence

Petitioner was charged with five counts of distribution of cocaine and was found guilty as charged on all five counts.  Petitioner was originally sentenced, with respect to each count, to consecutively-running 20-year sentences.  However, after being adjudicated to be a third felony offender, petitioner's 20-year sentence with respect to count five was vacated and replaced with a life sentence to be served consecutively to his original 20-year sentences for counts one through four.  Petitioner argues that the above sentence is unconstitutionally excessive given the fact that he "was not a 'big time dope dealer'", but rather, "was convicted for selling small amounts of controlled subtance[s] to persons he

---

[13] *See* Federal rec, doc. 1, petitioner's supporting memorandum at p. 24.

[14] *See* discussion *supra* at pp. 6-16.

believed to be drug users."[15]

In support of his excessiveness argument, petitioner cites only state law. However, even if one assumes that the sentence was, in fact, violative of state law, absent a constitutional violation, petitioner is not entitled to federal habeas corpus relief.  *See generally Vardas v. Estelle*, 715 F.2d 206, 208 (5th Cir. 1983), *cert. denied*, 465 U.S. 1104, 104 S.Ct. 1603, 80 L.Ed.2d 133 (1984).

As for petitioner's life plus 80-year sentence being unconstitutional, the Supreme Court has specifically rejected the principle that the Eighth Amendment contains a proportionality guarantee.  *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991).[16]  If a sentence is within the statutory limits, a federal habeas court will not upset the terms of that sentence unless it is so disproportionate to the offense as to be completely arbitrary and shocking.  *Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir. 1975); *see also Smallwood v. Johnson*, 73 F.3d 1343, 1347 (5th Cir. 1996) (emphasizing that a federal court will not review a state sentencing without a threshold showing that the sentence is "grossly disproportionate to the offense").

---

[15] *See* Federal rec. doc. 1, petitioner's supporting memorandum at p. 28.

[16] In *Harmelin*, 501 U.S. at 962, 111 S.Ct. at 2684, quoting *Rummel v. Estelle*, 445 U.S. 263, 274, 100 S.Ct. 1133, 1139, 63 L.Ed.2d 382 (1980),  the Supreme Court reaffirmed that "'for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative.'"

In addressing petitioner's excessiveness argument on direct appeal, the Louisiana Fifth Circuit Court of Appeal first considered the consecutive 20-year sentences which petitioner originally received in connection with convictions on five counts of cocaine distribution.  The court reasoned:

> The penalty for distribution of cocaine is imprisonment at hard labor for not less than five years nor more than thirty years, with the first five years of the sentence to be served without benefit of parole, probation, or suspension of sentence.  In addition, the trial judge may impose a fine of not more than fifty thousand dollars on each count.  La. R.S. 40:967(B)(4)(b).
>
> In support of his argument that his sentences are excessive, defendant asserts that he "was convicted for selling small amounts of a controlled substance to persons he believed to be drug users" and he is not a "big time dope dealer."
>
> In *State v. George,* 34,621 (La. App. 2 Cir. 4/4/01), 785 So.2d 975, the court affirmed a thirty-year sentence for a defendant who sold $20 worth of cocaine to an undercover police officer.  As in the present case, the judge noted that the defendant had a lengthy criminal history.  In affirming the sentence, the court of appeal pointed out that the defendant had "demonstrated that he is not capable of leading a law-abiding life" because the record showed he spent his entire adult life either committing crimes or in prison.  *Id.* at 980.
>
> Similar circumstances are present here.  The record shows that the defendant has prior felony convictions for issuing worthless checks and simple robbery.  Prior criminal activity is one of the factors to be considered by the trial judge in sentencing a defendant and prior criminal activity is not limited to convictions.  *State v. Washington,* 414 So.2d 313, 315 (La.1982).  The defendant in the instant case received two-thirds of the maximum sentence for each of his convictions.  In light of the defendant's past record, the twenty-year sentence for each count does not appear to violate the trial court's vast sentencing discretion.
>
> With respect to the imposition of consecutive sentences, La C.Cr.P. 883 states in pertinent part:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.

In the present case, defendant's convictions result from five separate sales to two different undercover agents occurring over a three month period.  Based upon these factors, the five sales are clearly acts sufficiently separate and distinct to justify consecutive sentences. *State v. Sanders,* 98-855 (La. App. 5 Cir. 5/19/99), 734 So.2d 1276, 1278-1279.

*Dillon*, 812 So.2d at 773 -774.

The state appellate court next considered "the constitutional excessiveness of defendant's life sentence as a third-felony offender", reasoning:

Louisiana's Habitual Offender Law, LSA-R.S. 15:529.1, provides in part:

> (A) (1) Any person who, after having been convicted within this state of a felony ... thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
> ....
>
> (b) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
> ....
>
> (ii) If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances

Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

The Louisiana Supreme Court has repeatedly upheld the constitutionality of the Habitual Offender Law, and accordingly, the minimum sentences it imposes are likewise presumed to be constitutional. *State v. Johnson,* 97-1906 (La.3/4/98), 709 So.2d 672; *State v. Dorthey,* 623 So.2d 1276 (La.1993).

A sentencing judge must always start with the presumption that a mandatory sentence under the Habitual Offender Law is constitutional. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality. In order to rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is exceptional, that is, that because of unusual circumstances he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Downward departures from the minimum sentence under the Habitual Offender Law should occur only in rare situations. *State v. Lindsey,* 99-3256 (La.10/17/00), 770 So.2d 339, 343, 345; *State v. Johnson, supra; State v. Dorthey, supra.*

In addition, the trial judge must keep in mind the goals of the statute, which are to deter and punish recidivism, that the sentencing court's role is not to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders, but rather to determine whether the particular defendant before it has proven that the minimum sentence is so excessive in his case that it violates Louisiana's constitution. *State v. Lindsey, supra* at 343.

At the multiple offender hearing, the State presented evidence that, on May 5, 1990, the defendant pled guilty in case number 90-409 in Division "F" of the Twenty-Fourth Judicial District Court to attempted simple robbery for an offense that occurred on December 31, 1989. The State also presented evidence that, on April 3, 2000, the defendant pled guilty in case number 99-8039 in Division "H" of the Twenty-Fourth Judicial District Court to issuing

worthless checks totaling $207.68 on February 28, 1999.

Further, Lieutenant Patricia Adams of the Jefferson Parish Sheriff's Office, an expert in latent fingerprint analysis and comparison, testified that the fingerprints from a *Boykin* form as to case number 90-409 and case number 99-8039 were the same as the defendant.  The trial court held that the State presented sufficient evidence that the defendant convicted of five counts of distribution of cocaine was the same person who pled guilty in case number 90-409 and 99-8039 and found that the defendant was a third-time felony offender.

In this case, the defendant has one predicate conviction, attempted simple robbery, which is considered a crime of violence. La. R.S. 14:2(13)(y). Further, the defendant's underlying conviction was for distribution of cocaine in violation of the Uniform Controlled Dangerous Substances Law.  Under La. R.S. 15:529.1(A)(1)(b)(ii), the mandatory minimum sentence that the trial judge could have imposed was life imprisonment without benefit of probation, parole, or suspension of sentence.

In *State v. Lindsey, supra,* the defendant was found to be a fourth felony offender and sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. *Id.* at 341.  His underlying felony was simple robbery, a statutorily-defined crime of violence. *Id.* at 344.  His three predicate offenses were felonies but not enumerated as crimes of violence. *Id.* at 344.  In affirming the defendant's conviction and mandatory life sentence, the *Lindsey* court noted:

> In fact, he is exactly the type of offender that the Habitual Offender Statute intends to punish so severely.  He is sentenced to life imprisonment because he continues to commit felony after felony. The fact that his last felony was the only violent crime against a person is not an "unusual circumstance" that would support a downward departure.  A person with three prior non-violent felony convictions who then proceeds to commit a felony involving violence against a person has shown that his criminal conduct is becoming worse.  The goals of the Habitual Offender Statute, to deter and punish recidivism, are satisfied by imposing a life sentence against such a person.

*State v. Lindsey,* 770 So.2d at 344.

In this case, defendant's underlying conviction was distribution of cocaine.

His predicate offenses were issuing worthless checks and attempted simple robbery, which is a statutorily-defined crime of violence.  As in *Lindsey,* defendant has continued to commit felony after felony and, as in *Lindsey,* he is exactly the type of offender that the Habitual Offender Statute intends to punish so severely.  We find that the defendant's contention that he was not a "big time dope dealer" is not such an unusual circumstance that would warrant a downward departure from the mandatory minimum sentence of life imprisonment.  *Lindsey, supra.*  For these reasons, we find that the trial court did not abuse its wide discretion in imposing the mandatory minimum sentence on the defendant and that sentence was not excessive.

*Dillon*, 812 So.2d at 774 -776.

This court finds that the above-reasoning does not constitute an unreasonable application of pertinent Supreme Court law to the facts of this case.  *See Williams*, 120 S.Ct. at 1523.[17]  Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner, Michael Dillon, be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

---

[17]Discussion regarding Supreme Court's reasoning in *Williams* is set forth *supra* at pp. 5-6.

consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*,

79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this __25th__ day of _____April_____, 2007.


_____
LOUIS MOORE, JR.
United States Magistrate Judge